STATE, EX REL. JAMES J. RALSTON, RELATOR, V. GEORGE H. TURNER, CLERK OF THE SUPREME COURT AND SECRETARY OF STATE BAR COMMISSION, RESPONDENT.

4 N. W. (2d) 302

FILED JUNE 5, 1942.   No. 31279.

*Elmer E. Thomas, John A. Ryan* and *Samuel L. Winters,* for relator.

*Hall, Cline & Williams,* for respondent.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

The relator brought this original action to obtain a writ of mandamus against the clerk of the supreme court and secretary of the state bar commission, to compel him, as an administrative officer, to accept and file the application of the relator to take the state bar examination.

It is not questioned that the relator possesses all of the qualifications and made the proper application to take the state bar examination, as provided for in L. B. 114, an amendment to section 7-102, Comp. St. 1929 (Comp. St. Supp. 1941, sec. 7-102). The application, together with a tender of the fee therefor, was rejected by the defendant (respondent), for the reason that the law school from which

the applicant graduated was not a reputable law school, within the meaning of rule 3 of the rules of the supreme court for admission of attorneys. Applicant entered the University of Omaha Law School in February, 1938, and graduated therefrom June 13, 1941,

Rule 3, adopted by this court June 5, 1937, is in part as follows: "A reputable law school within the meaning of this rule for admission to the bar is one on the approved list of the standardization agency of the American Bar Association, or, until July 1, 1940, any other law school now operating in the State of Nebraska receiving the approval of the Supreme Court."

L. B. 114 (Comp. St. Supp. 1941, sec. 7-102) reads in part as follows: "All resident law schools now organized, operating and existing within this state are hereby declared to be reputable law schools; and graduates of any such law school are hereby declared to be eligible to take and may take the bar examinations hereinbefore provided for without discrimination; and, upon passing such examinations, they shall be admitted to the practice of the law at the bar of this state." This law became effective March 12, 1941. It makes it unnecessary for the school to be on the approved list of the standardization agency of the American Bar Association, and gives the school legislative accreditment.

The issue to be determined is whether the court must acquiesce in the qualifications for admission to the bar as prescribed by the legislature. Does the legislative or judicial department have authority to prescribe rules for admission to the bar?

The relator contends: "The right of the legislature to pass laws for the admission of attorneys to the bar is founded in the police powers of the state, which powers can be exercised by the Legislature only."

The case of State v. Drayton, 82 Neb. 254, 117 N. W. 768, is cited, holding: "Within constitutional limits, the legislature is the sole judge as to what laws should be enacted for the protection and welfare of the people, and as to when and how the police power of the state is to be exercised." It is

said in the opinion that jurists and writers of texts have not adequately prescribed the true extent and limitations of the police power, and the following quotations from 22 Am. & Eng. Ency. of Law appear in the opinion:

"It has been found impossible to frame, and is indeed deemed inadvisable to attempt to frame, any definition of the police power which shall absolutely indicate its limits by including everything to which it may extend and excluding everything to which it cannot extend, the courts considering it better to decide as each case arises whether the police power extends thereto." 22 Am. & Eng. Ency. of Law, 915.

"The character of police regulations, whether reasonable, impartial, and consistent with the Constitution and the state policy, is a question for the courts, for the police power is too vague, indeterminate, and dangerous to be left without control, and hence the courts have ever interfered to correct an unreasonable exertion or a mistaken application of it." 22 Am. & Eng. Ency. of Law, 936. In the last analysis, the courts determine whether legislation is within the police power or exceeds it.

Our attention is directed to several statutory enactments, viz., Laws of 1855, sec. 1 (p. 199) ; Revised Statutes of 1866, ch. III, sec. 1 (p. 14) ; General Statutes of 1873, ch. V, sec. 1 (p. 94) ; Compiled Statutes of 1895, ch. VII, secs. 1 and 2 (p. 108). The contention is that the legislature throughout its history has enacted statutes which control the admission of persons to the bar. Without detailing the statutory provisions, all legislation with reference to applicants for admission to the bar from the act of March 9, 1855, to the inclusion of the state into the Union in 1867, was during the period of territorial courts. All of such courts were legislative, created in virtue of national sovereignty under clause 2, sec. 3, art. IV of the Constitution of the United States. See *O'Donoghue v. United States*, 289 U. S. 516, 535, 53 S. Ct. 740. From and after the inclusion of the state into the Union and the adoption of the state Constitution, the legislature has provided certain qualifications for applicants for admission to the bar, and in so doing used the following language: "No person shall be admitted * * * unless * * *"

(section 7-102, *supra*), which deviated from the mandatory language appearing in the acts of 1855 and 1857.

Section 1, art. II of the Constitution of 1875, provided: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted." The provision of the organic law (Laws 1854, sec. 9, p. 25) that "The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law," was omitted.

Since the Constitution of 1875, until 1941, the legislature has not attempted in any manner to assert exclusive power to prescribe qualifications of applicants for admission to the bar, or to overrule any rule of the court relating to admissions. In 1937 this court, by rule, revoked the diploma privilege; likewise, requirements for two years of college education superseded section 7-102, *supra,* as it stood prior to 1941. Legislation has been consistent with the principle that, while the judiciary has the inherent power to admit and prescribe qualifications for attorneys, the legislature may impose minimum standards. This court has at all times recognized that, within the confines of the police power, the legislature has the right to prescribe the minimum requirements for admission to the bar. It is true that in the case of *In re Admission to the Bar,* 61 Neb. 58, 84 N. W. 611, the court accepted the legislative requirements for admission to the bar, but the power of this court to establish, by rule, higher qualifications for admission of applicants to the bar was not tested directly.

This court in *In re Disbarment Proceedings of Newby,* 76 Neb. 482, 107 N. W. 850, held: "This court alone can pass upon the qualifications of applicants for admission to the bar."

In *State v. Barlow,* 131 Neb. 294, 268 N. W. 95, this court held: "The supreme court is vested with the sole power to

admit persons to the practice of law in this state and to fix the qualifications for admission to the bar." In the body of the opinion it was said (p. 299): "This court has heretofore recognized and decided that it has the power to adopt rules fixing the qualifications for admission to the bar, and requires a higher standard of educational qualifications than does the statute," citing *In re Disbarment Proceedings of Newby, supra*. In the latter case it was said (p. 490): "It is a principle of general, if not uniform, application that the court which is entrusted with the power and the duty of determining the qualifications for admission to the bar has, by implication, the power and duty also to determine when those qualifications are wanting, and when the privilege of that high calling has been forfeited."

In *State v. Childe*, 139 Neb. 91, 295 N. W. 381, it was said in the opinion: "This court * * * is likewise invested with exclusive power to admit persons to the practice of law in this state and, except for the possible right of the legislature to make minimum requirements for the protection of the public by a proper exercise of the police power, to fix the qualifications for admission to the bar."

The foregoing cases use the definite and explicit language that this court has recognized the legislative function of making minimum requirements for admission to the bar, and likewise specifically states the power of the court with respect to qualifications for admission to the bar.

The relator contends: "Long acquiescence by the court in the power of the Legislature to legislate on this subject makes necessary a holding that L. B. 114 is constitutional, since it is in line with legislative practice since before the beginning of the state."

In support of the above contention relator cites 11 Am. Jur. 701, sec. 80, wherein it is said: "The general rule is that the exercise of powers and general acquiescence therein for a long period of years, especially if commencing with the organization of the government, may be treated as fixing the construction of the Constitution and as amounting to a contemporary and practical exposition of it." See, also,

*In re Williams,* 113 S. W. (2d) (Mo. App.) 353; *Myers v. United States,* 272 U. S. 52, 47 S. Ct. 21.

This court did acquiesce in the minimum standards imposed by the legislature and conceded that the legislature may prescribe minimum standards. There has been no interference on the part of the legislature where the court, by rule, has fixed higher standards for applicants for admission to the bar. See *In re Disbarment Proceedings of Newby, supra; State v. Barlow, supra; State v. Childe, supra.*

The relator contends: "The Legislature has power to regulate admissions to the bar by prescribing the standards therefor, and it is the duty of the court to give full effect thereto. If conditions prescribed are reasonable," citing *Vernon County Bar Ass'n v. McKibbin,* 153 Wis. 350, 141 N. W. 283, wherein the court said: "There is no question but that the legislature has power to regulate admission to the bar by prescribing a standard therefor, and it is the duty, as it should be the pleasure, of the court to give full effect to all reasonable efforts in that regard. Further, in case of the legislature having, as here, prescribed conditions of eligibility to admission to practice law, which are reasonable, want of such conditions should be regarded as insurmountable."

It is interesting to note in connection with this contention a later statement made by the Wisconsin court touching upon this subject, which, for comparison, is quoted as follows:

In *In re Cannon,* 206 Wis. 374, 240 N. W. 441, the court held: "The qualifications required of attorneys at law fixed by the legislature in order that public interests may be protected constitute only a minimum standard, and, while limiting the class from which the court must make its selection, do not constitute the ultimate qualifications beyond which the court cannot go in fixing additional qualifications deemed necessary by the courts for the proper administration of judicial functions."

The relator cites *In re Applicants for License,* 143 N. Car. 1, 55 S. E. 635, wherein the court held:

"Revisal, ch. 5, establishing the qualifications for applicants to practice law, is not unconstitutional as an unwarranted exercise of judicial power prohibited by sec. 8 of the Declaration of Rights, nor as an unlawful attempt to deprive the court of its inherent power to direct and control the conduct of attorneys who are its officers.

"The legislature has the right to establish the qualifications to be required of one to become a practicing member of the bar by virtue of the police power which is vested in that body."

The court said in the opinion (p. 6) : "To hold, as we are requested to do here, that when a legislature has acted and established the qualifications which shall be required, the court can go on and superadd others, would, in effect, destroy the right admitted to be in the legislature and uphold the court in the exercise of legislative power." Further (p. 8) : "If by inherent they intend to say—and this is all that most of them do say—that in the absence of legislation on the subject, the courts have the power to regulate and deal with the matters mentioned, this may be accepted. But if by inherent is meant that the power, to the extent claimed here, is one inherent because essential to the existence of the court and the proper exercise of its functions, we do not think the position can be maintained." Again, on the following page the court said: "The views we maintain on this question are supported, we think, by the best considered authorities."

The Massachusetts case of *Robinson's Case*, 131 Mass. 376, was cited in support of the North Carolina case. The statutes of Massachusetts failed to provide that a woman could be appointed to practice law in the state in the absence of such statute, and the application of a woman was rejected, and the question treated as one exclusively under legislative control. The *Robinson* case is at variance with the Massachusetts rule on this subject, as is best reflected by the following syllabi quoted from *In re Opinion of the Justices*, 180 N. E. 725 (279 Mass. 607) :

"Establishment by Constitution of judicial department

conferred authority necessary to exercise of its powers as coordinate department of government."

"Judicial department has inherent power ultimately to determine qualifications of those to be admitted to practice in its courts."

"No statute can control judicial department in performance of its duty to decide who shall enjoy privilege of practicing law."

"Statutes specifying qualifications of applicants for admission to practice law will be regarded as fixing minimum, binding on applicants, and not as setting bounds beyond which judicial department cannot go."

The case of *State v. Foreman*, 3 Mo. 602, was cited in the North Carolina case as a supporting authority. To disclose a later holding of the Missouri court, we quote from the fourth paragraph of the syllabus in *Clark v. Austin*, 340 Mo. 467, 101 S. W. (2d) 977, as follows:

"Any effort on the part of the legislature to prescribe the qualifications of applicants for admission to the bar * * * would be an unconstitutional attempt on the part of the legislative department to encroach upon the powers and functions of the judicial department.

"As a part of the inherent power of the supreme court it may not only determine the educational and moral qualifications of applicants for admission to the bar but may also discipline and disbar attorneys for misconduct."

Without criticizing the North Carolina court, we conclude that the supporting authorities for the decision have been, in the main, changed in the later decisions cited.

The relator contends: "Authority to enact rules was given the court by the Constitution and the Statutes. No court in America has inherent powers to make rules for admission to the bar. They have certain other inherent powers such as in contempt and disbarment cases. The court's power is limited by section 25 of article V of the Nebraska Constitution and by statutes to the making of rules which are not inconsistent with law. No rule of court can contradict a statute. If a rule of court shall contradict

the provisions of a statute which is within the police powers, or if such statute shall make requirements which contradict those contained in a rule of court, the rule is subordinate to the statute and must yield to it."

Several authorities are cited under the foregoing proposition, which space does not permit us to set forth. The case of *State v. Kirke,* 12 Fla. 278, is relied on. The court in that case said (p. 281) : "What was the law independent of the statute? At common law the courts had no power to admit attorneys or counselors, and it has been held that for this reason this is a power not inherent in a court, and in the absence of constitutional provisions a matter for regulation by the legislative department of the Government. It cannot be claimed as a part of the inherent power of courts, or as resulting necessarily from any power which they have. Indeed, barristers or counselors-at-law in England were never even appointed by the courts, but were called to the bar by the Inns of Court, which were associations not vested with even corporate powers, nor could the courts control the discretion of the Inns of Court as to whom they would call. In England the power of the courts to appoint attorneys has been from time to time regulated by statute. * * * The act which gave shape to the matter, and became a model, was the act of 4 Hen. IV., chapter 18, which, among other things, provided 'that all attorneys should be examined by the justices, and by their discretion their names shall be put upon the roll.' " See, also, *In Matter of Application of Cooper,* 22 N. Y. 67, and *People v. Justices of Delaware,* 1 Johns. Cases (N. Y.) 181.

The Florida court, speaking later in *Petition State Bar Association Re: Proposed Court Rules,* 134 Fla. 851, 862, 186 So. 280, said : "The inherent power of the court to prescribe rules is sound, but has some limitations. It may be defined by the Constitution and is so defined in some states. * * * If not defined by the Constitution, we approve the nigh universal doctrine that the power to regulate such matters by rule is inherent in the courts and cannot be taken from them by the legislature." Numerous cases are cited. On

page 863 the court said: "Dicta in *State v. Kirke,* 12 Fla. 278, and *Gould v. State,* 99 Fla. 662, 127 So. 309, may at first blush appear contrary to the general rule here approved, but careful examination discloses that the dicta in these cases were merely statements of the early common-law rule under which admission to the bar was deemed to be a legislative function, but that it was under the act of 4 Hen. IV, chapter 18, made a judicial function which it continued to be and was so when the common law of England was adopted by statute in this State * * * . Many of the cases cited in support of the general rule hold that the legislature may in the exercise of its police power prescribe rules and regulations for admission to the bar which the courts will respect, but that such rules and regulations have reference to minimum requirements and must not deprive the courts of their inherent power in the matter."

The relator cites *Ex parte Gregory Yale,* 24 Cal. 241, in which the court, in an attempt to show that the inherent power of the courts over admissions is derived from the Constitution, and is for that reason exclusive of the power of the legislature, said: "The manner, terms, and conditions of their admission to practice, and of their continuing in practice, as well as their powers, duties and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is created or regulated by statute. * * * There is no provision of the Constitution directly restricting the legislature from exercising plenary control over the qualifications, admission, oath, or duties of attorneys at law, and in our opinion no such restriction arises by implication; and it therefore follows that the legislature may lawfully require, as a condition to their admission to practice, or their continuance in practice, the taking of the oath prescribed in the Act under consideration, or, at their pleasure, may dispense with all conditions and oaths."

A complete answer to the foregoing case is found in *In re Cate,* 273 Pac. (Cal. App.) 617, wherein it was held:

"Power to admit applicants to practice law is judicial, not legislative, and invested in courts only, which means that they may weigh and deliberate, as well as make orders admitting to bar."

"Court's inherent power over admissions to bar is derived from Constitution, and hence exclusive of legislature's authority under police power to invade such field in disguise of regulation."

"A power in a court which the legislature does not give cannot be taken away by it."

"The judicial department should control the appointment, discipline, and removal of its officers, including attorneys."

"The legislature cannot destroy the constitutional functions of either the executive or judicial department of government under the guise of regulation."

"The courts have the power by rule to regulate the entire subject of admission of attorneys to the bar, and their discipline and disbarment."

This court, in speaking of inherent power of the courts, in *In re Integration of the Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N. W. 265, said:

"The Constitution does not, by any express grant, vest the power to define and regulate the practice of law in any of the three departments of government. In the absence of an express grant of this power to any one of the three departments, it must be exercised by the department to which it naturally belongs because 'It is a fundamental principle of constitutional law that each department of government, whether federal or state, "has, without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department,* not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the Constitution." 1 Andrews' American Law (2d ed.) sec. 182, p. 221.' *In Matter of Richards,* 333 Mo. 907, 63 S. W. (2d) 672. * * *

"There being no express grant of power in the Constitution to any of the three departments of government to define and regulate the practice of law, the question is—to what

department does that power naturally belong." And on page 287 this court said:

"The claim of inherent judicial power is no novelty. There are many cases in which it has been invoked over the membership of the bar. It has been invoked in the admission, suspension, discipline and disbarment of attorneys and in these no legislative permission is considered requisite, and, if a statute exists, it is regarded as declaratory of the inherent power of the judiciary and not exclusive in its provisions. The term 'inherent power of the judiciary' means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court." See, also, *State v. Kirk*, 133 Neb. 625, 276 N. W. 380; *State v. Barlow, supra; State v. Childe, supra; State v. Daugherty*, 136 Neb. 490, 286 N. W. 783.

We quote from the body of the opinion in *In re Cannon*, 206 Wis. 374, 240 N. W. 441, at page 396: "If the courts and the judicial power be regarded as an entity, the power to determine who should be admitted to practice law is a constituent element of that entity. It may be difficult to isolate that element and say with assurance that it is either a part of the inherent power of the court, or an essential element of the judicial power exercised by the court, but that it is a power belonging to the judicial entity cannot be denied. Our people borrowed from England this judicial entity and made of it not only a sovereign institution, but made of it a separate, independent, and coordinate branch of the government. They took this institution along with the power traditionally exercised to determine who should constitute its attorneys at law. There is no express provision in the Constitution which indicates an intent that this traditional power of the judicial department should in any manner be subject to legislative control. Perhaps the dominant thought of the framers of our Constitution was to make the three great departments of government separate and independent of one another. * * * While the legislature may legislate with respect to the qualifications of attorneys, its power in that respect does not rest upon any power

possessed by it to deal exclusively with the subject of the qualifications of attorneys, but is incidental merely to its general and unquestioned power to protect the public interest. When it does legislate fixing a standard of qualifications required of attorneys at law in order that public interests may be protected, such qualifications constitute only a minimum standard and limit the class from which the court must make its selection. Such legislative qualifications do not constitute the ultimate qualifications beyond which the court cannot go in fixing additional qualifications deemed necessary by the courts for the proper administration of judicial functions."

We conclude that the power to admit a person to the practice of law is a judicial, and not a legislative, function.

The relator again calls attention to section 25, art. V of the Nebraska Constitution, which provides as follows: "For the effectual administration of justice and the prompt disposition of judicial proceedings, the supreme court may promulgate rules of practice and procedure for all courts, uniform as to each class of courts, and not in conflict with laws governing such matters. To the same end, the court may, and when requested by the legislature by joint resolution, shall certify to the legislature, its conclusions as to desirable amendments or changes in the general laws governing such practice and proceedings."

In addition to the foregoing, relator cites section 27-210, Comp. St. 1929, which provides that the judges of the supreme court, during certain periods, shall revise general rules of the court and adopt additional rules necessary or appropriate for the dispatch of business; and also sections 27-231, 27-233 and 27-235, Comp. St. Supp. 1939, providing, respectively, that the supreme court shall have power to promulgate general rules of practice and procedure; for report to the legislature and the right to change, amend, or modify the rules of the court, but that the same shall not change, amend or modify until the report has been made to the legislature by the court, and the right of the legislature to change, amend or repeal at any time any rule or amend-

ment promulgated and reported by the court; that such act does not empower the supreme court to exercise legislative power and shall not extend or enlarge the power of the supreme court beyond the authority found in section 25, art. V of the Constitution.

The relator's contention is that this court does not possess inherent power to make rules for admission to the bar; that the court's power is limited by the provisions of section 25, art. V of the Constitution, and by the statutes as to making of rules that are not inconsistent with the law.

Section 25, art. V of the Constitution, does not limit the judicial power with respect to making rules as to qualifications for applicants to take examinations for admission to the bar, but refers to practice and procedure relating to the manner of conducting cases in court and rules with reference thereto. See *In re Integration of the Nebraska State Bar Ass'n, supra.*

In 49 C. J. 1312, it is said: "The course of procedure in the courts, which, in a general sense, includes pleadings; the form, manner, and order in which proceedings have been and are accustomed to be had; the form, manner, and order of conducting and carrying on suits or prosecutions in the courts through their various stages, according to the principles of law, and the rules laid down by the respective courts; * * * Practice includes the formula by which jurisdiction is first asserted and afterward exercised in respect of any litigation in all its phases, until it is finally completed."

The relator further contends that the defendant has violated his rights, under section 1 of the Fourteenth Amendment to the Constitution of the United States, by denying him the equal protection of the law, by violating his privileges and immunities as a citizen of the United States, and by depriving him of his property rights and his liberty to be admitted to the practice of the profession of the law, without due process of law and without any process of law, and in violation of law. In this connection the relator states that rule 3 makes an unfair discrimination between appli-

cants for admission to the bar in the particular that law students must either have studied law in a reputable law school, as defined by the court, or in a law office of a practicing attorney, but cannot apply for admission if they have studied law in a school which is not included in the rule; that those who have attended law schools, which are accredited by the standardization agency of the American Bar Association, and those who have studied law in a law office are preferred as against those who have studied law in a school not included by such agency. Decisions announcing the following rule are relied on:

" 'The legislature may make a reasonable classification of persons, corporations and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated.' *State v. Hall*, 129 Neb. 669, 262 N. W. 835." *Steinacher v. Swanson*, 131 Neb. 439, 268 N. W. 317.

It has not been shown by relator that the classification made by the court is arbitrary or without rational basis, or that it is actually and palpably unreasonable. See *Borden's Farm Products Co. v. Baldwin*, 293 U. S. 194, 55 S. Ct. 187; *New York, ex rel. Bryant, v. Zimmerman*, 278 U. S. 63, 49 S. Ct. 61.

We deem it unnecessary to set out the requirements of rule 3 with reference to law office students. Such students have had the benefit of long historical precedent. This court in *In re Admission to the Bar*, 61 Neb. 58, 84 N. W. 611, said:. "Admission to the practice is a privilege and not a right, and the power which grants the privilege can annex the terms and conditions on which the same may be exercised."

It will be recalled that rule 3, heretofore set out in part, was adopted June 5, 1937. The relator commenced his study of law in the University of Omaha Law School in

1938, and with full knowledge that graduates of that school would not be permitted to take the bar examination after July 1, 1940, unless the law school became an approved law school, within the meaning of rule 3. The rules were not changed after relator commenced his study of law, and doubtless he could have fully met the requirements of the rule by studying in a law office, as prescribed therein. This he did not do and is in no position to now complain about applicants for admission to the bar having studied in law offices, as prescribed by the rule. The foregoing contention is not merited under the existing circumstances.

L. B. 114 constitutes an endeavor on the part of the legislature to go beyond the concept of minimum requirements for an applicant to take an examination for admission to the bar, and to dictate to the supreme court, in view of the authorities heretofore cited and accepted as law, that the judicial department shall be shorn of its power to place higher standards or requirements of applicants for admission to the bar than the legislature has provided; that the legislature shall exercise, from and after the passage of the legislative bill, a power which belongs to the judiciary, and that all decisions of this court announcing the concept of the judicial functions in reference to the subject-matter are a nullity.

L. B. 114 is unconstitutional in that it directly usurps the inherent power of this court to fix and determine the qualifications of an applicant for admission to the bar in this state on a subject which naturally falls within the orbit of the judicial branch of government. Even if the subject of the legislation was a proper exercise of legislative power, L. B. 114 is void and unconstitutional in that it freezes the class. This court has repeatedly held such legislation to be unconstitutional.

WRIT DENIED.

YEAGER, J., dissents.

ROSE, J., dissenting.

Without regard to the propriety or validity of the legislation under consideration, I am convinced that the rules of

court should be such as to permit relator to take the state bar examination and, in the event that he is successful in passing it, that he should be admitted to the bar, if found to be otherwise qualified.