361 F.2d 499
 H. Samuel HACKIN, Appellant,
v.
Lorna E. LOCKWOOD, Jesse A. Udall, Charles C. Bernstein, Fred C. Struckmeyer, Jr., Ernest W. McFarland, Justices of the Supreme Court and the State Bar of Arizona, Appellees.
 No. 20446.
 United States Court of Appeals Ninth Circuit.
 May 20, 1966.
 Rehearing Denied July 1, 1966.
 
 H. Samuel Hackin, in pro. per.
 Mark Wilmer, Richard Mallery, Snell & Wilmer, Phoenix, Ariz., for appellees.
 Before BARNES and JERTBERG, Circuit Judges, and MATHES, Senior District Judge.
 BARNES, Circuit Judge:
 
 
 1
 This is an appeal from a final judgment of the United States District Court for the District of Arizona, granting appellees' motion to dismiss, and dismissing the cause of action and appellant's complaint and amended complaint as to all appellees.
 
 
 2
 The dismissal was "for the reasons stated in the Court's opinion of August 2, 1965." That opinion was not published and does not appear in the record before us.
 
 
 3
 Appellant, appearing in propria persona, is a graduate of a school of law not "provisionally or fully approved by the American Bar Association at the time of his graduation."
 
 
 4
 By subdivision 6 of Rule IV of the "Rules Pertaining to Admission of Applicants to the State Bar of Arizona," as amended November 5, 1962, appellant must be a graduate of such an accredited school before he can take the Arizona Bar examinations.
 
 
 5
 Other restrictions prescribed by the same rules are that each applicant must be:
 
 
 6
 1. Over twenty-one years of age.
 
 
 7
 2. A bona fide resident of Arizona six months or a graduate of the University of Arizona.
 
 
 8
 3. A citizen of the United States.
 
 
 9
 4. Of good moral character.
 
 
 10
 5. Mentally and physically able to engage in active and continuous practice.
 
 
 11
 * * * * * *
 
 
 12
 7. If entitled to practice in another state, in good standing there.
 
 
 13
 Appellant sued below under Title 28, United States Code, Section 1343(3) which authorizes a civil action in the district courts by any person:
 
 
 14
 "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."
 
 
 15
 This court has jurisdiction on appeal. 28 U.S.C. § 1291.
 
 
 16
 The purpose of the section quoted is to enforce the Fourteenth Amendment to the Constitution (Davis v. Foreman, 251 F.2d 421 (7th Cir.), cert. den. 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1148 (1958)), which provides that "No State shall make or enforce any law which shall abridge the privileges * * * of citizens of the United States; nor shall any State deprive any person of * * * property, without due process of law; nor deny to any person * * * the equal protection of the laws."
 
 
 17
 Appellant sued as defendants the individual Justices of the Supreme Court of the State of Arizona "as public officials," (Amended Complaint, para. 1, C.T. p. 66) and The State Bar of Arizona, a public corporation.
 
 
 18
 Appellant urges three questions are involved:
 
 
 19
 I. Whether appellant's rights under the Fourteenth Amendment are violated by the aforesaid rules restriction?
 
 
 20
 II. Whether the United States District Court had jurisdiction to give the relief prayed?
 
 
 21
 III. Whether the State Bar Committee and the Justices of the Arizona Supreme Court, in promulgating and administering such rules, acted arbitrarily, capriciously, unreasonably, and without factual foundation?
 
 
 22
 Conceding in his statement of issues that a classification of applicants is permissible, if the basis for such classification be reasonable, appellant contends the classification here made, for the reason given ("to protect the public against unethical or incompetent practitioners") is unreasonable.
 
 
 23
 * Preliminarily, we consider the defendants named.
 
 
 24
 The State Bar of Arizona is not an appropriate party to the suit because it cannot promulgate or change the rules governing admission to practice in Arizona. Its Board of Governors can suggest rules to the Arizona Supreme Court, and can enforce them, but only with the approval of the Arizona Supreme Court. Arizona Revised Statutes § 32-237, sub-sec. 2 (1956). Rule 28 of the Rules of the Supreme Court of Arizona, 17 A.R.S. governs the admission of attorneys to practice.[1]
 
 
 25
 In the original complaint, but not in the amended complaint, appellant named as a defendant the "Committee on Examinations and Admissions," presumably of the State Bar. This is not a committee of the State Bar, but a committee named by the Supreme Court of Arizona, made up of members of the Arizona State Bar, Rule 28(a). Thus we find the power to grant or deny admission is vested solely in the Arizona Supreme Court. But we see no reason that such improper joinder should prevent our review of the matter as to proper parties. Cf. Konigsberg v. State Bar, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957).
 
 II
 
 26
 The second preliminary question is whether there exists a sovereign immunity in the State of Arizona from suits filed against it, and whether the prohibition in the Eleventh Amendment bars jurisdiction in the federal courts to entertain such litigation. Amendment XI states:
 
 
 27
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
 
 
 28
 In Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), it was construed to bar a suit against a state in a federal court by its own citizens. To the same effect, see Chandler v. Dix, 194 U.S. 590, 24 S.Ct. 766, 48 L.Ed. 1129 (1904); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); United States v. State of Mississippi, 380 U.S. 128, 85 S.Ct. 808, 13 L. Ed.2d 717 (1965); Smith v. Rackliffe, 87 F. 964 (9th Cir. 1898); Skokomish Indian Tribe v. France, 269 F.2d 555 (9th Cir. 1959); DeLong Corporation v. Oregon State Highway Com'n, 233 F.Supp. 7 (D.Or.1964), aff'd, 343 F.2d 911 (9th Cir. 1965); Note, Private Suits Against States in the Federal Courts, 33 U.Chi. L.Rev. 331 (1966).
 
 
 29
 Is this suit against the individual Justices of the Supreme Court of Arizona a suit against the State of Arizona? It is if no relief is sought against the Justices as private individuals. The prayer here seeks a permanent injunction against the application of Section 6 of Rule IV, supra, to the plaintiff. The prayer thus seeks remedial action against the defendant Justices as Justices — performing at the least a quasi-judicial act. They have no individual or joint power, acting outside their judicial capacity, to enact rules relative to the admission to practice law, or the requirements therefor. Ex Parte State of New York, No. 1, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).
 
 
 30
 As is said in Brents v. Stone, 60 F. Supp. 82, 84 (E.D.Ill.1945): "This is not an action to restrain alleged unlawful action by state officials * * *. It is rather a suit to coerce state action."
 
 
 31
 If appellant is not suing the Arizona Supreme Court Justices as private individuals, but as a court performing its duties, then the court is a department of the State of Arizona — a part of the State — and subject to the State's immunity hereinbefore mentioned.
 
 
 32
 But we are not convinced any such immunity exists if one of three divisions of the State are sued under 28 U.S.C. § 1343, and more particularly subsection (3) alleging a deprivation of a constitutional right. If the Eleventh Amendment were an absolute bar, there would be no jurisdiction in the federal district courts to hear any of the reapportionment cases. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); Lucas v. Forty-Fourth Gen. Assembly of State of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L. Ed.2d 632 (1964); Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965); Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965); Silver v. Jordan, 241 F.Supp. 576 (S.D.Calif.1964); Thigpen v. Meyers, 211 F.Supp. 826 (W.D.Wash.1962); Herweg v. Thirty Ninth Leg. Assem of State of Montana, 246 F.Supp. 454 (D. Mont.1965).
 
 
 33
 We therefore turn to other defenses interposed in support of the dismissal of plaintiff's complaints. We likewise defer consideration of the claim of res adjudicata, and proceed to the meat of the matter.
 
 III
 
 34
 Is subdivision 6 of Rule IV (the admission requirement of graduation from an accredited law school) reasonable, and therefore not violative of the Fourteenth Amendment?
 
 
 35
 Just as the Supreme Court in Schware, infra, refused (353 U.S. at 239 n. 5, 77 S.Ct. at 756) to go into any discussion whether the practice of the law is a "right" or a "privilege," we need not do so. In either event, any restriction on such practice must be valid, i. e., reasonable. (Compare Lathrop v. Donohue, 367 U.S. 820, 844, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961).)
 
 
 36
 We agree with appellant that for the requirement to be reasonable it must not be arbitrary; the reason for the prevention of practice must be valid. Power Manufacturing Co. v. Saunders, 274 U.S. 490, 493, 47 S.Ct. 678, 71 L.Ed. 1165 (1927).
 
 
 37
 "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed. 2d 796 (1957).
 
 
 38
 Any classification can, in a sense, be claimed arbitrary. Is it arbitrary or unreasonable for Arizona to require that an extraordinarily bright legal student, twenty years of age, who has graduated from an accredited law school, wait until he is twenty-one before he can take the examination? We think not. Knowledge may be acquired early by a bright and assiduous student, but the odds are that his judgment will not be so soon acquired. It would be entirely possible, of course, were we to envision a twenty year old law school graduate, that his judgment would be as good or better than one who graduates at twenty-five, but it is probable that it would not.
 
 
 39
 "To a wide and deep extent, the law depends upon the disciplined standards of the profession and belief in the integrity of the courts [in prescribing rules of admission]. We cannot fail to accord such confidence to the state process, and we must attribute to its courts the exercise of a fair and not a biased judgment in passing upon the applications of those seeking entry into the profession." Mr. Justice Frankfurter, concurring, in Schware v. Board of Bar Examiners, 353 U.S. at 249, 77 S.Ct. at 761.
 
 
 40
 That this high respect for the action of the various State Supreme Courts in determining who should practice law within their respective states is properly a strong factor to be considered in determining whether there has been a Fourteenth Amendment denial of due process and equal protection, is amply demonstrated by the trilogy of 1961 decisions of the Supreme Court of the United States in this field. See the second Konigsberg case — Konigsberg v. State Bar, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961), and Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961).
 
 
 41
 In the last named case, at 366 U.S. 129, 81 S.Ct. 962, the majority opinion emphasizes:
 
 
 42
 "The issue is not, of course, whether lawyers are entitled to due process of law in matters of this kind, but, rather, what process is constitutionally due them in such circumstances. We do not hold that lawyers, because of their special status in society, can therefore be deprived of constitutional rights assured to others, but only, as in all cases of this kind, that what procedures are fair, what state process is constitutionally due, what distinctions are consistent with the right to equal protection, all depend upon the particular situation presented, and that history is surely relevant to these inquiries.[11] * * *
 
 
 43
 11. Of course it is not alone the early beginning of the practice of judicial inquiry into attorney practices which is significant upon the reasonableness of what transpired here. Rather it is the long life of that mode of procedure which bears upon that issue, in much the same way that a strong consensus of views in the States is relevant to a finding of fundamental unfairness. * *"
 
 
 44
 While none of these cases deal with restrictions based on legal study, we cannot conclude that all educational restrictions are unlawful. We assume that few would deny that a grammar school education requirement, before taking the bar examination, was reasonable. Or that an applicant had to be able to read or write. Once we conclude that some restriction is proper, then it becomes a matter of degree — the problem of drawing the line.
 
 
 45
 In determining whether Arizona's educational requirement is arbitrary, the fact that Abraham Lincoln and Dean Roscoe Pound had no, or little, formal legal schooling is interesting, but not conclusive. Prior to the time restrictions on admission to the bar became almost universal, for every successful lawyer who had had no formal legal training, there have been scores of incompetent lawyers practicing law, to the detriment of the public. No lawyer who has donated his time and effort to bar disciplinary proceedings can conclude otherwise.
 
 
 46
 Roscoe Pound (the example named by appellant herein as one without formal legal education) was himself a member of the 1913 Committee of the American Bar Association that induced the Carnegie Foundation to survey all the law schools of this country, and to evaluate the matter of admission to the bar in the various states of the entire country. Published early in 1921,[2] it had a tremendous effect on the adoption of the the American Bar Association's accreditation rule, adopted later in 1921. This was approved by the Association of American Law Schools. In urging its adoption, the Honorable Elihu Root described the vast complications of the then statutory enactments (increased many fold since 1921) as "a wilderness of laws and a wilderness of adjudications that no man can follow — [which] require not less but more ability; not less but more learning; not less but more intellectual training in order to advise an honest man as to what his rights are and in order to get his rights for him."
 
 
 47
 Even the State of Georgia, long known as the "easiest" state in which to become a lawyer (and the only state where for years no legal or prelegal study was required before a taking of the bar examination), set up the requirement of a high school education, or its equivalent, as of July 1, 1952. Approximately one half of the states of the Union have similar if not identical requirements to those of Arizona.
 
 
 48
 But whatever the various states, in their respective wisdom, may require before allowing the taking of bar examinations — so long as they are applicable to every citizen alike, it should be of no concern to the federal courts.[3]
 
 
 49
 We conclude the fundamental question here is whether Rule IV, Section 6 of the Rules Pertaining to Admission of Applicants to the State Bar of Arizona is "arbitrary, capricious and unreasonable." We conclude an educational requirement of graduation from an accredited law school is not. Rosenthal v. State Bar Examining Committee, 116 Conn. 409, 165 A. 211, 87 A.L.R. 991 (1933); Henington v. State Board of Bar Examiners, 60 N.M. 393, 291 P.2d 1108 (1956); State ex rel. Ralston v. Turner, 141 Neb. 556, 4 N.W.2d 302, 144 A.L.R. 138 (1942).
 
 
 50
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Rule 28, Rules of the Supreme Court of the State of Arizona, reads as follows:
 "The examination and admission of applicants for membership in the State Bar of Arizona shall conform to this Rule. For such purpose, a committee on examinations and admissions consisting of five active members of the state bar shall be appointed by this court upon the recommendation of the board of governors of the state bar which shall recommend at least three members of the state bar for each appointment to be made. The committee shall examine applicants and recommend to this court for admission to practice applicants who are found by the committee to have the necessary qualifications and to fulfill the requirements prescribed by the rules of the board of governors as approved by this court respecting examinations and admissions heretofore adopted and made effective May 25, 1948, and as amended effective February 1, 1954, and such other rules as hereafter may be adopted. The court will then consider the recommendations and either grant or deny admission. As amended effective June 19, 1964." (Appellees' Brief, pp. 4-5.)
 
 
 [2]
 Training for the Public Profession of the Law (Carnegie Foundation for the Advancement of Teaching, 1921)
 
 
 [3]
 We refer to Chapter VII, The Accreditation of Law Schools by Homer D. Crotty, Esq., of the Los Angeles Bar Association, appearing in the volume "Bar Examinations and Requirements for Admission to the Bar" — (1952)
 In it, he quotes from the brilliant 1938 survey of the Law Schools of Tennessee:
 "`The law is a public profession and, therefore, legal education must be considered from the public, rather than the private, viewpoint. However anxious an individual is to set up a law school, whether for profit or for pleasure or for other reasons, he should not do so unless that school or class or study group can reasonably be expected to turn out products which will be a credit to the profession, having in view the public's interest in it. This means every school should be required to meet reasonable standards such as the court may lay down and which, when announced, should be enforced. Qualifications for admission to the bar as well as standards for law schools should be determined by the public interest. If it be said that higher standards in Tennessee would bar some poor boys from becoming lawyers, is not the logical answer that standards for law schools and for admission to the bar must be determined on the basis of what is in the public interest and not on the rights of any individual to become a member of any given profession or calling without being adequately prepared to fulfill its obligations? This is the standard which has been applied successfully in the medical profession and it is equally applicable in law. A standard set to meet every possible condition of poverty is no standard at all. No one, rich or poor, should consider himself entitled to admission to any profession without meeting fair professional standards. It is impossible to place a hurdle low enough to accommodate every underprivileged person, and yet place a bar to the unworthy ones who look upon the law as the easy way to a position where one may live by his wits and prey upon the public.'"