Anna Lee BROWN, Plaintiff,

v.

SUPREME COURT OF NEVADA, Board of Bar Examiners of the State of Nevada, Board of Governors of the State Bar of Nevada, Does I through X, Defendants.

No. CIV–R–79–136 HEC.

United States District Court, D. Nevada.

July 17, 1979.

Margie Ann Richards, Carson City, Nev., for plaintiff.

Donald Klasic, Deputy Atty. Gen., Carson City, Nev., for Supreme Court of Nevada.

Eleissa C. Lavelle, Las Vegas, Nev., for Bd. of Examiners and Bd. of Governors of the State Bar of Nevada.

## DECISION

CLAIBORNE, District Judge.

This matter is currently before the Court on Plaintiff's Motion for Preliminary Injunction and upon the Defendants' Motions to Dismiss. The action arises out of the following facts: Plaintiff, a woman citizen of the State of Nevada since 1968, graduated with a law degree from LaSalle University, a correspondence law school, which is not accredited by the American Bar Association. She was permitted to sit for the California Bar Examination and, in 1977, was admitted to the practice of law in the State of California. Subsequently, she made a timely application to the Board of Bar Examiners of the State of Nevada to sit for the 1979 bar examination, to be held July 25 through July 26, 1979. The Board of Bar Examiners rejected her application on March 23, 1979 on the grounds that it did not comply with Nevada Revised Statutes Supreme Court Rule 51(3), which states:

> . . . An applicant for examination for a license to practice as an attorney and counselor at law in this state shall:
>
> . . . (3) [h]ave received a degree of bachelor of laws, or an equivalent law degree, from a law school approved by the committee on legal education and admissions to the bar of the American Bar Association, and shall present evidence of the same . . .

Thereafter, on May 22, 1979, Plaintiff filed a petition to the Supreme Court of the State of Nevada seeking a waiver of Rule 51(3), and permission to sit for the 1979 Nevada Bar Examination. The Supreme Court summarily denied her petition on June 7, 1979.

Subsequently, Plaintiff brought this action on June 25, 1979, and the within motion on June 27, 1979, alleging that the denial of her application violates the Equal Protection Clause of the Fourteenth Amendment for the reason that the Nevada Supreme Court has granted "Rule 51(3) waiver petitions" to six (6) male applicants, but has denied her application. It appears to the Court from the affidavits on file herein of Donald Klasic and William E. Isaeff, both Deputy Attorney Generals for the State of Nevada, that from 1968 through 1978, eight (8) graduates of law schools not accredited by the American Bar Association, all males, filed applications for waiver of the Rule 51(3) requirement, of which seven (7) of the petitions were granted. In 1979, nine (9) such graduates, seven (7) male and two (2) female, filed applications for waiver, of which the Nevada Supreme Court denied all but one. The petition of Thomas J. Standish was granted apparently because he graduated from Osgoode Hall Law School in Canada which, but for the fact that it is a law school in a foreign country, would be accredited by the A.B.A. Other than the application of Standish, the Nevada Supreme Court's rationale in granting or denying said applications is not explicitly clear to anyone.

Defendants Board of Bar Examiners of the State of Nevada, and Board of Governors of the State Bar of Nevada move to dismiss the action on the following grounds: 1) This Court lacks subject matter jurisdiction over the action; 2) Defendants are not proper parties to this action; and 3) Plaintiff has failed to state a claim for relief based upon a violation of the Equal Protection Clause of the Fourteenth Amendment. The State of Nevada also moves to dismiss and alleges, as additional grounds, that the Nevada Supreme Court is not a "person" within the meaning of 42 U.S.C. § 1983.

### SUBJECT MATTER JURISDICTION

The Tenth Circuit in *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976) laid out the following test for determination of lower Federal Courts' jurisdiction over state bar administrative proceedings: While Federal Courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority *or the administration of the rules,* such is not true where review of a state court's *adjudication* of a particular application is sought. *Id.* at 597 (emphasis added). Cf. *Keenan v. Board of Law Examiners of North Carolina,* 317 F.Supp. 1350, 1354 (E.D.N.C.1970) [Held: lower federal court

has jurisdiction to determine whether state rule governing admission to practice of law viz. residency requirement is unconstitutional] and *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969) [Held: lower federal court has no jurisdiction to review state proceedings relating to the admission, discipline, and disbarment of members of its bar.] Although *Doe* is a Tenth Circuit case, it appears to me that the Ninth Circuit would be in accord on the basis of language in *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir. 1966). In rejecting the Appellant's contention that the Arizona counterpart to N.R.S.S.C.R. Rule 51(3) was per se violative of the Fourteenth Amendment, the *Hackin* Court noted:

> But whatever the various states, in their respective wisdom, may require before allowing the taking of bar examinations—*so long as they are applicable to every citizen alike,* . . . *should be of no concern to the federal courts.*

361 F.2d at 504 (emphasis added).

Thus, the threshold question before the Court is this: Does Plaintiff seek this Court's jurisdiction in order to review the state's *administration of the rules,* or to review the state court's *adjudication* of a particular application? In this case, the Nevada Supreme Court appears to be "administering" Rule 51(3), but the court likewise is acting in a judicial capacity in that regard. However, it evidently is not "adjudicating" the matters in a classic sense: that is, the Nevada Supreme Court apparently does not afford a petitioner such as Plaintiff a hearing or notice of a decision based upon findings of fact and does not authorize the undertakings of a fact-finding investigation in aid thereof.

Admittedly, the delineation between "administration" and "adjudication" in a case such as this is somewhat fuzzy and, unfortunately, no court to my knowledge including the *Doe* Court clarified that distinction. However, I would note that cases involving "adjudication" such as *MacKay, Doe* and *Flangas v. State Bar of Nevada,* et al., CIV–LV–79–82, HEC involve situations where the state bar and/or state supreme court have denied one the privilege of practicing law based on investigations, hearings, findings of fact, and recommendations. This comports with my notion of what "adjudication" means and, on that basis, I hold that the Supreme Court's summary denial of Plaintiff's petition for waiver of the Rule 51(3) requirement constitutes nothing more than administration of state rules for the admission to the practice of law; the fact that members of the judiciary as opposed to members of an administrative agency so acted is of no import. Accordingly, I hold that this Court has subject matter jurisdiction under 28 U.S.C. § 1343 to determine whether the Nevada Supreme Court's administration of Supreme Court Rule 51(3) constituted a violation of Plaintiff's constitutional rights.

## VIOLATION OF EQUAL PROTECTION (DUE PROCESS)

■ In determining whether the Nevada Supreme Court's administration of Rule 51(3) unconstitutionally discriminates on the basis of sex, this Court must apply a two-fold test: The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse reflects invidious gender-based discrimination. In this second inquiry, impact provides an "important starting point," but purposeful discrimination is "the condition that offends the Constitution." *Personnel Administrator of Massachusetts v. Feeney,* —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) and cases cited therein.

Applying this test to the case at bar, it is clear that Rule 51(3) as applied is not violative of equal protection. First of all, Rule 51(3) clearly is neutral; the statute does not expressly or impliedly discriminate against women in the administration of waivers of the "A.B.A. accreditation" requirement. Secondly, while the only two women to apply for the waiver in the last eleven years have been rejected, the adverse effect clearly does not reflect invidious gender-based

discrimination. The only pattern which is definite from the evidence is that, prior to 1979, the Supreme Court generally granted 51(3) waivers, but in 1979, the Court generally denied them—without regard to the gender of the applicant.

However, Plaintiff argued in the oral argument on this matter that, notwithstanding any alleged lack of invidious discrimination, the evidence clearly shows an *arbitrary* and *capricious* administration of Rule 51(3); in other words, while her complaint does not allege this ground for relief, she now is arguing that Defendants have denied her *due process of law,* in violation of the Fourteenth Amendment.

I agree. The Fourteenth Amendment specifically states: " . . . Nor shall any State deprive any person of life, liberty, or property without due process of law; . . ." The touchstone of due process is protection of the individual against arbitrary action of government (*Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)), and this is every bit as applicable to state court judges performing in official judicial capacity as it is to other state governmental officials (cf. *Caldwell v. Texas,* 137 U.S. 697, 11 S.Ct. 224, 34 L.Ed. 816 (1891); *Malinski v. People of the State of New York,* 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); *N.A.A.C.P. v. State of Alabama, etc.,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). The essence of "substantive due process" is that state action which deprives a person of life, liberty or property must have a rational basis for so doing; the reason for the deprivation may not be so inadequate that it would be characterized as arbitrary. *Jeffries v. Turkey Run Consol. School Dist.,* 492 F.2d 1, 3–4 (7th Cir. 1974).

In the case at bar, the State of Nevada, by and through its Supreme Court, is denying Plaintiff her freedom to practice and to continue her chosen lawful profession; such a right falls within the "liberty" concept of the Fourteenth Amendment, and is protected against unreasonable state interference. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 35 L.Ed.2d 548; *Gilm-*

*our v. New York State Racing and Wagering Board,* 405 F.Supp. 458, 459–460 (S.D.N.Y.1975). Supreme Court Rule 51(3) authorizing the Court to do so is unquestionably constitutionally valid (*Hackin v. Lockwood, supra*), and if the Court applied the rule equally to all petitioners or indicated a rational basis upon which it exercises its discretion in this regard, Plaintiff would not be denied due process of law. However, it appears from all indications that the Court exercises its discretion arbitrarily and capriciously in deciding petitions for waiver of SCR Rule 51(3), and such an exercise cannot be countenanced under the Fourteenth Amendment to the United States Constitution.

The parties should note well that I do not decide what procedure the Nevada Supreme Court must follow henceforth in ruling upon petitions brought by such persons as Plaintiff; I need not so decide, as procedural due process and substantive due process are separate and independent mandates of the Fourteenth Amendment. See *Chicago, B. & Q. R. Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

*42 U.S.C. § 1983 "PERSON" REQUIREMENT*

▮ The Supreme Court moves to dismiss on the grounds that it, the named Defendant, is not a "person" within the meaning of 42 U.S.C. § 1983. This is correct; the Nevada Supreme Court as an agency of the State of Nevada, is immune from suit under both the Eleventh Amendment and 42 U.S.C. § 1983, and is not a "person" under the latter. *Quern v. Jordan,* 440 U.S. 332, 343, 344, 99 S.Ct. 1139, 1146–1147, 59 L.Ed.2d 358 (1979). However, Plaintiff may bring an action for prospective injunctive relief against officials of the state; such an action violates neither the Eleventh Amendment nor 42 U.S.C. § 1983. *Quern v. Jordan, supra; Edelman v. Jordan,* 415 U.S. 651, 676–677, 94 S.Ct. 1347, 1362–1363, 39 L.Ed.2d 662 (1974). Accordingly, this action as titled and the relief as prayed constitutes nothing more than pleading defects, and leave shall be granted to so amend.

## IMPROPER PARTIES TO THE ACTION

■ Defendants Board of Governors and Board of Bar Examiners move to dismiss the complaint as to them on the grounds that, under *Hackin v. Lockwood*, they are not appropriate parties to this action. The *Hackin* Court held that where the State Bar of Arizona had no authority to promulgate or change the rule viz. graduation from an A.B.A. accredited school as a condition to admission to the Arizona State Bar, the State Bar was not a proper party to sue for injunctive relief. 361 F.2d at 500–501. Such is the case at bar; the State Bar of Nevada does not promulgate or administer Rule 51(3). Although the State Bar did return Plaintiff's application on the basis of Rule 51(3), there is nothing before the Court to suggest that the State Bar has anything more than a ministerial duty in that regard. Accordingly, these two Defendants are dismissed.

## MOTION FOR PRELIMINARY INJUNCTION

■ In order to be entitled to a preliminary injunction in this jurisdiction, Plaintiff must demonstrate each of the following: 1) a substantial likelihood of success on the merits of his case; 2) a substantial threat that plaintiff will suffer irreparable injury if a preliminary injunction is not granted; 3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction would cause to the defendant; and 4) that the granting of the preliminary injunction will serve the public interest. *Kennecott Copper Corp., Nevada Mines Division v. Train*, 424 F.Supp. 1217, 1227 (D.Nev.1976). Plaintiff has met the first requirement for reasons hereinabove stated. The second, third and fourth requirements are easily met. The threat of impairment to the exercise of Plaintiff's lawfully chosen occupation easily outweighs the expense to Defendants in administering one more bar examination. Furthermore, the admission of competent attorneys to the practice of law in this state is always a matter of public interest.

## CONCLUSION

The Motion for Preliminary Injunction is granted. The complaint is dismissed with leave to amend, as follows: Plaintiff shall name the individual justices of the Nevada Supreme Court only, and shall sue for injunctive relief only based upon the theory of denial of due process in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff shall have twenty (20) days from the date of this decision to file and serve an amended complaint.