In the Matter of the Application of
## CHARLES ROBERT NORT
No. 12143

January 24, 1980

605 P.2d 627

*Jeffrey D. Sobel,* Las Vegas, for Petitioner.

*Samuel S. Lionel,* Las Vegas, for Nevada Board of Bar Examiners.

## OPINION

*Per Curiam:*

Petitioner seeks waiver of SCR 51(3), which requires that an applicant for examination for a license to practice as an attorney in this state "[h]ave received a degree of bachelor of laws, or an equivalent law degree, from a law school approved by the committee on legal education and admissions to the bar of the American Bar Association, and shall present evidence of the same." The Board of Bar Examiners has opposed the petition.[1]

Petitioner concedes that he has not met the requirements of this rule, but urges the court to grant him a waiver, particularly referring us to Brown v. Supreme Court of Nevada, 476 F. Supp. 86 (D. Nev. 1979), in which the district judge concluded that this court "exercises its discretion arbitrarily and capriciously in deciding petitions for waiver of SCR Rule 51(3)". *Id.* at 89. Since we cannot agree with this characterization of our

---

[1]The Board of Bar Examiners of the State Bar of Nevada has been delegated, through the Supreme Court Rules, the power to interview and examine applicants, conduct hearings and receive evidence, in order to determine the applicants' qualifications, and to recommend to this court the admission or rejection of applicants for admission to the practice of law in this state. SCR 49(1) and (3); SCR 57.

decisions in this regard, we have determined to set forth at some length the history and rationale of our rulings in the matter of waiver of the accreditation rule.

The predecessor of Rule 51(3) was adopted in 1946, effective January 1, 1950. In 1959, this court first addressed the issue of waiver of the rule. In re Lorring, 75 Nev. 330, 340 P.2d 589 (1959). Petitioner Lorring had graduated in 1925 from a law school which was not accredited until 1941. The court referred to the purposes behind the adoption of the rule:

> The State of Nevada in thus acting joined a nationwide movement evidenced by recommendations and resolutions of Sections of the American Bar Association and by the activities of the National Conference of Bar Examiners to raise the standards of the bar, and one of the methods adopted by the State Bar of Nevada and the supreme court of this state to achieve this end was the requirement of proof of educational background before an applicant would be permitted to take the state bar examinations. To this was finally added the requirement for a law degree from a law school duly accredited by the Legal Education Section of the American Bar Association, whose first accredited list of law schools was certified in 1923.

*Id.* at 332, 340 P.2d at 590. The court concluded that:

> In view of the careful and continuous consideration given by this court and by its Board of Bar Examiners, acting as an arm of this court, in line with an understandable and admirable national trend, to the matter of educational requirements determining the eligibility of persons to take the state bar examinations, and of the very precise fixing of the dates upon which the several amendments were made to take effect, so as to prevent a hardship on those applicants who had geared their educational programs to then existing provisions, we are compelled to conclude that the present petition does not warrant an order of this court waiving the rules in question. Petition denied.

*Id.* at 333, 340 P.2d at 591. The decision in *Lorring* regarding petitioners who had attended schools prior to adoption of the rule was reaffirmed in 1967. In re Batten, 83 Nev. 265, 428 P.2d 195 (1967). At that time the court also expressed its reluctance to grant a waiver, on any ground, to the provisions of the accreditation rule.

In 1972, however, the court considered the petition of Peter Hawke Burleigh, an applicant with highly impressive academic credentials, who had attended law school in England, and

therefore could not meet the technical requirement of ABA accreditation. Mr. Burleigh's petition was accompanied by a detailed description of the English education system and the legal curriculum which he followed, and an affidavit from his former headmaster. The court granted Mr. Burleigh permission to take the bar examination, deferring its ruling on the merits of his petition to waive the accreditation requirements. After the petitioner had passed the examination, the Board of Bar Examiners informed the court that it had "completed its investigation into petitioner's character and qualifications" and had "no objection to petitioner's admission." In re Burleigh, No. 6874 (Order of Oct. 13, 1972). The court accordingly ordered Mr. Burleigh's admission to the bar.

In 1976, this court received another petition for waiver of the rule. In re Kadans, 93 Nev. 216, 562 P.2d 490, *appeal dismissed,* 434 U.S. 805 (1977). At that time, the court directed the State Board of Bar Examiners to undertake a full inquiry and report concerning the petitioner's personal and academic background. The report of the State Bar concluded, and the court agreed, that the petitioner had only marginal academic credentials for the practice of law, and had made misleading claims which manifested his moral unsuitability for the practice of law in this state. The court concluded that the accreditation requirement did "not operate unfairly as to petitioner," and Mr. Kadans' petition for waiver was therefore denied. *Id.* at 220, 562 P.2d at 493.

In 1977, this court received three applications for waiver of the accreditation rule. In two of those cases, the Board of Bar Examiners did not oppose the petitions to sit for the 1977 bar examination. In re Freudenheim, No. 9649; In re McCarthy, No. 9910. In the third, the Board did object, but did not controvert the allegation that the law school from which the petitioner graduated fully complied with all the criteria for ABA accreditation, except that it was operated for profit. In re Herring, No. 9738 (1977). *See* Approval of Law Schools, American Bar Association Standards and Rules of Procedure, § 202 (1977) (hereafter Rule 202). Mr. Herring's application was accompanied by considerable data regarding the operation and rationale for Rule 202, including the Report of the American Bar Foundation Liaison Research Project No. 3 (Dec. 29, 1976), recommending a two-year suspension of Rule 202, to allow proprietary schools to seek accreditation. All three 1977 applicants were allowed to sit for the examination, after which the Board recommended admission of the successful candidates.

As the court suggested in *Lorring,* the purpose of the educational requirement now embodied in SCR 51(3) was to promote high standards of competence among those admitted to the members of the professional bar within this state. The United States Supreme Court has noted, "It is undisputed that a State has constitutionally permissible and substantial interest in determining whether an applicant [for admission to membership in its professional bar] possesses 'the character and general fitness requisite for an attorney and counselor-at-law.' Law Students Research Council v. Wadmond, 401 U.S. 154, 159 (1971)." In re Griffiths, 413 U.S. 717, 722–23 (1973). *Cf.* Dent v. West Virginia, 129 U.S. 114 (1889). That Court has also noted that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 (1975). In this state the ultimate responsibility for regulating the admission to the bar, and the commensurate obligation to assure the public of the competency of its members, rests with this court. *See* In re Schaengold, 83 Nev. 65, 422 P.2d 686 (1967); Ex Parte Kellar, 79 Nev. 28, 377 P.2d 927 (1963).

In common with many other jurisdictions, we have elected to make use of the accreditation resources of the American Bar Association, in order to provide for an effective evaluation of an applicant's legal education without imposing an impossible burden on the resources of this court or the Board of Bar Examiners. *See* In re Stephenson, 511 P.2d 136, 139 (Alaska 1973), *modified on other grounds,* Avery v. Board of Governors, 576 P.2d 488 (Alaska 1978), LaBossiere v. Florida Board of Bar Examiners, 279 So.2d 288, 289 (Fla. 1973); Appeal of Murphy, 393 A.2d 369, 371 (Pa. 1978), *appeal dismissed,* 440 U.S. 901, 99 S.Ct. 1204 (1979). On the other hand, we have been mindful that the ultimate responsibility is also ours to ensure that applicants are treated fairly, and that the rules do not operate in a manner inconsistent with the constitutional protections afforded those who seek to practice their chosen profession within this state. We have been well aware that "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1957).

To deny an applicant such as Mr. Burleigh admission to the bar solely on the ground that his legal education was acquired at an institution which was not accredited by the ABA when the Board of Bar Examiners had, after examination, satisfied itself as to his character and qualification, and when that institution's lack of accreditation was not related to the quality of legal education provided, but rather to the circumstance of its location outside the geographical area encompassed by the accreditation activities of the ABA, would have been to ignore our obligation to ensure that the operation of Rule 51(3) does not exclude qualified applicants on a basis which has no rational connection with his fitness to practice law in this state. *Cf.* In re Griffiths, *supra. See* Appeal of Murphy, *supra.* It was a similar concern which prompted us to defer consideration of the application of Mr. Herring until the Board of Bar Examiners should have had an opportunity to examine his qualifications.

The substance of Mr. Herring's claim was that *but for* Rule 202, which precluded ABA accreditation of schools operated for profit, the law school which he attended, Western State University College of Law (Western State), met all the educational standards for ABA accreditation. This allegation was not disputed by the Board of Bar Examiners. Insofar as it appeared to this court, therefore, the question presented was whether Mr. Herring would be denied admission by the strict operation of Rule 51(3) on a ground unrelated to the quality of legal education which he received.

The relationship of Rule 202 to the quality of education offered by a law school has been the subject of considerable debate within the ABA itself. The status of this debate in 1977 has been described by the Supreme Court of Minnesota, Application of Hansen, 275 N.W. 2d 790, 795 (Minn. 1978), *appeal dismissed,* 441 U.S. 938, 99 S.Ct. 2154 (1979).

> Prior to 1977 the ABA, as a matter of policy, refused even to consider accrediting proprietary law schools. Its opposition stemmed from its belief that the establishment of an educational institution for profit would have to affect negatively the caliber of the education provided to the students. When the goal of a law school is to make money, the reasoning went, the administration will skimp on services, and the students will necessarily suffer. More recently, however, persons within the ABA have challenged this assumption. In response to this pressure the ABA established a committee to study whether the organization should accredit proprietary law schools. The Committee to Study the Accreditation of Proprietary Law

Schools recommended, however, that before the Association decided to modify the accreditation process, it should be sure of the incorrectness of its assumption that a school's proprietary status is a shorthand measure of other education deficiencies. Thus, the Committee recommended that it should permit proprietary law schools to apply for provisional accreditation. If they are able to meet the other ABA requirements, the Association will permanently repeal the standard relating to nonproprietary status.

*See also* D. Fossum, *Law School Accreditation Standards and the Structure of American Legal Education,* 1978 ABF Research Journal 515.

In light of (1) the uncontroverted allegation that but for Rule 202, Western State would be entitled to ABA accreditation; (2) the serious questions raised regarding the connection between Rule 202 and the quality of education offered by a law school; and (3) the eventual recommendation by the Board of Bar Examiners that Mr. Herring be admitted, the waiver was granted.

In 1978, three applicants for admission to the bar petitioned this court for waiver of the accreditation rule. In re Hope, No. 10677; In re Bernard, No. 10721; In re Wassner, No. 10781. Hope and Wassner based their petitions on the fact that they had attended the same school as Mr. Herring, and therefore were equally entitled to waiver of the rule. Mr. Bernard alleged that he had attended a school which also was not accredited solely because it was operated for profit. Each was allowed to sit for the 1978 bar examination, with decision on the merits deferred until after the examination. Only *after* the petitioners had taken the examination did the Board of Bar Examiners seek to challenge the substantive allegations of the petitioners—i.e., that the schools attended were not accredited *solely* because they were operated for profit.[2] Under these circumstances, when petitioners had expended the considerable time

[2] In October, 1978, the Board of Bar Examiners filed with the court the brief of the American Bar Association in Application of Hansen, *supra*. The brief set forth the resolution adopted by the Council of the Section of Legal Education and Admissions to the Bar, June 18, 1977, providing that "until the date of June 30, 1979, it will accept application for provisional approval from any proprietary law school which can show that it substantially complies with all of the Standards for Approval of Law Schools by the American Bar Association except Standard 202 and the last clause of Standard 203 and gives assurance that it will be in full compliance with all of the Standards for Approval of Law Schools by the American Bar Association except Standard 202 and the last clause of Standard 203 within three years after receiving provisional approval. . . ." App., p. 1A.

and effort required to prepare for the bar examination, without any indication from the Board of Bar Examiners that opposition would consist of any more than an urging that the court strictly enforce the rule (despite the Board's withdrawal of opposition to Mr. Herring's application the previous year), the court determined to proceed with granting waivers of the rule.

Mr. Nort, petitioner herein, along with eight other applicants, petitioned to waive the requirements of SCR 51(3) in 1979. Mr. Nort had attended Western State. His contention was that he had attended the same school as Mr. Herring, and therefore should be allowed to sit for the examination.

Of the other 1979 petitioners, five based their applications primarily on the admission of Herring, Hope and Bernard.[3] Two were graduates of Western State, who made substantially the same argument as that advanced by Nort. In re Kossick, No. 11742; In re Johnson, No. 11773. Two others were graduates of the law school attended by Bernard, and also contended that on the basis of his admission, and that of others from non-accredited schools, they should be admitted. In re Abrahams, No. 11718; In re Homick, No. 11789. Another petitioner was a graduate of LaSalle Correspondence School of Law, and member of the California Bar, who also relied on the admission of other graduates of non-accredited schools in previous years. In re Brown, No. 11864.[4]

Of these petitions, that of petitioner Brown was of course disposed of on the grounds that she had neither made a showing that the law school attended lacked accreditation solely on the ground that it was operated for profit, see e.g., Approval of Law Schools, American Bar Association Standards and Rules of Procedure, § 305 (1977), nor that it offered an education which was substantially similar to that offered by ABA

---

[3]Of the other applicants, one advanced an argument substantially similar to that disposed of by this court, In re Lorring, supra. In re Louis, No. 11772. Another applicant petitioned for waiver on the ground that he had graduated from a law school which was provisionally accredited in the following year. In re Klinn, No. 11839. The petitioner's documentation did not, however, establish that significant changes had not been made in the quality of education offered between petitioner's graduation and the provisional accreditation. Cf. Florida Board of Bar Examiners (In re Eisenson), 272 So.2d 486 (Fla. 1973). These petitions for waiver were therefore denied. A final petitioner was able to make substantially the same showing as that made by petitioner Burleigh—i.e., that his school was denied accreditation solely on the basis that it was outside the geographical scope of the ABA accreditation process, and offered an education substantially similar, or superior, to that offered by ABA accredited schools. No opposition to the petition was submitted by the Board of Bar Examiners. This petition was granted. In re Standish, No. 11838.

[4]Petitioner Brown was subsequently administered the examination, pursuant to federal court order, Brown v. Supreme Court of Nevada, supra.

accredited schools. Essentially, Brown argued that we should abandon our educational requirements altogether, and rely solely on the results of the bar examination. This we declined to do. As a federal district court noted of the educational requirements imposed by the Supreme Court of a sister state, Moore v. Supreme Court of South Carolina, 447 F.Supp. 527, 529 (D.S.C. 1977), *cert. denied,* 439 U.S. 984 (1979);

> This test [the bar examination] has a great deal of value; however, the fact that one passes the bar exam does not necessarily mean that he is qualified to practice law. A person may 'read law' or take correspondence courses which may prepare him for the bar exam but which may not prepare him for the practice of law.
>
> The other means of ensuring the qualifications of candidates for admission to the bar is the requirement that they graduate from an ABA approved law school. By imposing this requirement the Supreme Court was clearly seeking assurance that the applicants received some kind of formal legal education with a broader scope than mere preparation for the bar exam. The Supreme Court obviously saw the value of lectures by legal scholars, classroom discussions, the teaching of research skills, and student oral arguments—all facets of a legal education which are not tested by the bar exam.

Nor did the admission of petitioner to the bar of another state entitle the petitioner to admission to the practice of law in this state, in derogation of our own independent requirements. *See* Leis v. Flynt, 439 U.S. 438 (1979). Brown's petition was therefore denied.

As to Nort, and the other similarly situated petitioners, the court had, in 1979, information upon which to reevaluate, in a timely manner, the claims of the petitioners that their schools lacked ABA accreditation solely because of the operation of Rule 202. As noted by the court in Application of Hansen, *supra,* 275 N.W.2d at 795, the ABA Council of the Section of Legal Education and Admissions to the Bar had resolved, on June 18, 1977, to accept applications for provisional accreditation from proprietary law schools until June 30, 1979. Despite this waiver, Western State had not applied. Indeed, according to materials submitted in connection with the 1979 petitions, no proprietary school had submitted such an application as of April, 1979, though the deadline was extended to July, 1981. The significance of this change of circumstance was noted by the Supreme Court of Minnesota, *id.* at 795–96 (footnote omitted):

Petitioner argues that if Western State were not a proprietary school it would certainly have been accredited, or, alternatively, that it is an excellent school whose excellence goes unrecognized by the ABA because of its proprietary nature. Western State contends that the fact of its accreditation by the California Committee of Bar Examiners and by the Western Association of Schools and Colleges either entitles it automatically to accreditation by the ABA or should cause this court to waive the requirement of ABA accreditation for graduates of Western State. But, as the ABA responds, we have nothing but the bare assertions of petitioner and his law school that Western State offers a quality education and is in substantial compliance with all relevant factors that go into the quality education formula. Because Western State has refused to apply for provisional accreditation despite ABA requests that it do so, no ABA personnel have visited its campuses to evaluate its programs. Thus, we have no way of knowing whether Western State could have substantially complied with the other ABA requirements for accreditation.

The rules regarding application for admission to the bar in this state explicitly provide that in any proceeding before the Board of Bar Examiners, or this court, the burden of proof lies with the applicant. SCR 64(2). Because of this information, first available to this court only after the 1978 bar examination had been administered, and explicitly relied upon by the Board of Bar Examiners in their opposition to the 1979 petitions, we were no longer in a position to accept the assertion by petitioners that the law schools which they had attended were unaccredited solely by the operation of Rule 202.

To grant the petitions of Nort and the other similarly situated applicants in 1979 would have been to abandon the requirement of a threshold showing that the unaccredited status of the law school attended was due solely to a factor unrelated to the quality of education offered. This would have represented a substantial and unwarranted extension of this court's previous rulings granting waiver of Rule 51(3). It would, in fact, have represented an abandonment of the accreditation rule itself, by requiring a factual determination by this court, or the Board of Bar Examiners, as to the quality of the educational program offered by the law school attended by each petitioner. As suggested above, neither this court nor the Board of Bar Examiners has the resources to undertake this

task in a meaningful manner, particularly given the large number of petitions which would be expected to follow such a decision.[5] *See* Appeal of Murphy, *supra*. Accordingly, the petitions of Nort, as well as the others who had based their petitions for waiver on similar grounds, were denied.

In the instant petition, Nort asks, in effect, that we reconsider that decision. We are not pursuaded that we were in error, or that petitioner has been deprived of any constitutional right by our denial of his application. As the United States Supreme Court has recently held, there is no constitutional right to admission to the practice of law within a state without compliance with its admissions requirements. Leis v. Flynt, *supra*. Nor, as the court suggested, is such a right created "merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." *Id.*, 439 U.S. at 444, n. 5. *See also* Hickey v. District of Columbia Court of Appeals, 457 F.Supp. 584, 588 (D.D.C. 1978). The educational requirements represented by the ABA Standards have been consistently upheld against constitutional attack. *See,* e.g., Lombardi v. Tauro, 470 F.2d 798 (1st Cir.), *cert. denied,* 412 U.S. 919 (1972); Hackin v. Lockwood, 361 F.2d 499 (9th Cir.), *cert. denied,* 385 U.S. 960 (1966); Murphy v. State Bd. of Law Examiners, 429 F.Supp. 16 (E.D.Pa. 1977); Moore v. Supreme Court of South Carolina, *supra;* Huffman v. Montana Supreme Court, 372 F.Supp. 1175 (D. Mont.), *aff'd,* 419 U.S. 955 (1974); In re Stephenson, *supra;* Ralston v. Turner, 4 N.W.2d 302 (Neb. 1942); Henington v. State Board of Bar Examiners, 291 P.2d 1108 (N.M. 1956); Application of Schatz, 497 P.2d 153 (Wash. 1972).

Nor are we convinced that the rule otherwise "operates unfairly" as to petitioner. *See* In re Kadans, *supra*. Nort, like

[5]We note that in view of our proximity to California, where graduates of schools which are not ABA accredited are permitted to take that state's bar examination, it is not unreasonable to expect that very substantial numbers of such petitions would be submitted, were we to adopt such a course. For example, statistics reported in 54 California State Bar Journal, at 122–23 (March/April 1979), reveal that of those taking the fall, 1977, bar examination in that state, 921 had attended California law schools accredited in California but not accredited by the ABA, and 487 had attended California law schools accredited neither by California nor by the ABA. Of those taking the spring, 1978, examination, 1239 applicants had attended California law schools accredited only by that state, and 651 had attended California law schools approved neither by California nor by the ABA.

the other similarly situated petitioners, chose to attend a law school which did not have ABA accreditation, in the face of the long-standing provisions of SCR 51(3). Many years ago the United States Supreme Court established that it is only when educational requirements established as a prerequisite for practicing a profession within a state "have no relation to such calling or profession, or are unattainable by . . . reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation." Dent v. West Virginia, *supra*, 129 U.S. at 122.

This court will continue to exercise its inherent and exclusive power to control admissions to the professional bar of this state, *see* Feldman v. State Board of Law Examiners, 438 F.2d 699 (8th Cir. 1971), so as to provide relief from the operation of the rules of admission whenever it can be demonstrated that the rules operate in such a manner as to deny admission to a petitioner arbitrarily and for a reason unrelated to the essential purpose of the rule. Absent such a showing, we will not entertain such petitions. *Cf.* LaBossiere v. Florida Board of Bar Examiners, *supra*.

Accordingly, the petition is denied.