Charles P. LUCAS

v.

MAINE COMMISSION OF PHARMACY.

Supreme Judicial Court of Maine.

Argued Nov. 23, 1983.

Decided Feb. 17, 1984.

Bowie & Parker, Paulette P. Parker (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Linda M. Pistner, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Charles Lucas, a registered pharmacist in Massachusetts, applied to the Maine Commission of Pharmacy[1] ("Commission") for registration to practice his profession in Maine under the reciprocity provision of 32 M.R.S.A. § 2902 (Supp.1983–1984).[2] By the

1. The statutory name of defendant Commission is "Board of Commissioners of the Profession of Pharmacy," which is variously referred to in the pertinent statutes as the "board" and the "commissioners." *See* 32 M.R.S.A. § 2851 (Supp.1983–1984).

2. 32 M.R.S.A. § 2902 prescribes the registration requirements in Maine to be met by both applicants for original licensure and applicants for registration by reciprocity. The requirements for original licensure are prescribed in section 2902 as follows, so far as here pertinent:

Every person not already registered, entering upon the practice of pharmacy, upon the payment of a fee of $100 to the secretary of said board, except as otherwise provided, shall be examined by said commissioners and shall present to them satisfactory evidence that he had been graduated from some regu-

larly incorporated college of pharmacy and has been employed in a pharmacy for at least one year, and is competent for the practice of pharmacy. Such employment in a pharmacy may be accumulated during the years at the college of pharmacy. The commissioners may give him a certificate of the fact and that he is authorized to engage in the business of a pharmacy, and such certificate must be signed by at least 3 members of the board. No such certificate shall be issued unless the applicant is at least 18 years of age, of good moral character, a citizen of the United States and a graduate of a school or college of pharmacy or a department of pharmacy of a university, accredited by the American Council on Pharmaceutical Education, and shall file proof satisfactory to the board, substantiated by proper affidavits, of sufficient service and experience in a retail

terms of that section, reciprocal registration in Maine is available to Massachusetts pharmacists only if "such other state shall require a degree of competency equal to that required of applicants of this State." The Commission found that Massachusetts did not require as high a degree of competency for original applicants as does Maine, and for that reason, denied Lucas's application. Lucas sought direct judicial review in the Superior Court (Kennebec County), which affirmed. On his appeal to this court, we also in effect affirm the Commission's decision.

From 1968 to 1973 Lucas attended the Hampden College of Pharmacy, located in Willimanset, Massachusetts, from which he received a Bachelor of Science degree in pharmacy. The Hampden College of Pharmacy is not accredited by the American Council on Pharmaceutical Education (ACOPE). After a satisfactory performance on national and state pharmacy examinations, Lucas in 1973 was registered to practice pharmacy in Massachusetts,[3] and since that time he has worked as a pharmacist in a drug store and a hospital in that state. In 1976 Lucas enrolled in a graduate therapeutics program at the Massachusetts College of Pharmacy, which conferred its Master of Pharmacy degree upon him in 1980. Although ACOPE has accredited the bachelor's program at the Massachusetts College of Pharmacy, ACOPE has not accredited any masters programs there or elsewhere.

Following Lucas's filing on December 2, 1981, of his application for reciprocal registration in Maine, the Commission held a public hearing on April 6, 1982. On October 12, 1982, the Commission issued an extensive opinion in letter form denying Lucas's application. That opinion construed section 2902 to require any applicant for original licensure in Maine to hold a degree of Bachelor of Science in Pharmacy from an institution accredited by ACOPE. Since Massachusetts had licensed Lucas as a pharmacist, even though he did not have a bachelor's degree from an ACOPE-accredited school, the Commission concluded that "the State of Massachusetts [does not] require 'a degree of competency *equal* to that required of applicants in this State' as required by § 2902." (Emphasis in original) The Commission also determined that Lucas's graduate degree from the Massachusetts College of Pharmacy

> is not relevant to the determination of whether your licensure in ... Massachusetts required a degree of competency equal to that required of applicants in Maine for the following reasons:
>
> a. Although the Massachusetts College of Pharmacy Bachelor degree programs are both accredited by the American Council on Pharmaceutical Education and approved by the [Maine] Commission of Pharmacy, graduate degree programs are neither accredited by the American Council nor approved by the Commission.
>
> b. The educational qualifications required of Maine applicants under § 2902 relate solely to Bachelor degrees and not to graduate degrees.
>
> c. Successful completion of a masters' degree program does not ensure a degree of competency equal to that of a Bachelor's degree from an accredited

---

pharmacy under the supervision of a registered or licensed pharmacist; and shall pass an examination by said board....

All applicants for original licensure must possess a degree in pharmacy that is the Bachelor of Science in Pharmacy, Bachelor of Pharmacy or Bachelor of Arts in Pharmacy. The requirement for registration by reciprocity is prescribed in the sixth sentence of section 2902, which reads as follows:

The board may, in its discretion, grant certificates of registration to such persons as shall make the payment of a fee of $150 to the secretary of the board and shall furnish with their application satisfactory proof that they have been registered in some other state, provided such other state shall require a degree of competency equal to that required of applicants in this State.

3. The next year Lucas also qualified as a registered pharmacist in Florida, but he has now abandoned any claim that his Florida registration entitles him to reciprocity in Maine.

and approved school of pharmacy. Such a Bachelor's degree program is designed to ensure general competency in the profession of pharmacy whereas a masters' degree program is designed to add to that basic general competency and may be specialized in nature.

Pursuant to the Administrative Procedure Act, 5 M.R.S.A. §§ 11001–11008 (1979 & Supp.1983–1984), and Rules of Civil Procedure, Lucas sought Superior Court review of the Commission's action. He argued that the Commission misinterpreted the educational background required for reciprocal registration under section 2902 and that the legislature had unconstitutionally delegated to ACOPE the task of accrediting pharmacy schools. On April 26, 1983, the Superior Court denied Lucas's appeal, rejecting both his statutory and his constitutional arguments.

### I. *Construction and Application of Reciprocity Provisions of Section 2902*

On appeal to this court Lucas first argues that his registration as a Massachusetts pharmacist satisfies the requirements for reciprocal registration under section 2902. He challenges the Commission's finding that since Massachusetts licensed him even though he did not have a bachelor's degree from an accredited pharmacy school, that state does not "require a degree of competency equal to that required of applicants of this State." Lucas attacks the Commission's implicit holding that section 2902 requires any applicant for reciprocal licensure to hold a bachelor's degree from an accredited school.

An administrative agency's interpretation of a statute administered by it is entitled to "great deference." *See Maine Human Rights Commission v. Local 1361, AFL–CIO,* 383 A.2d 369, 378 (Me.1978). The Commission's construction of the reciprocal registration provisions of section 2902 will be upheld unless that section plainly compels a contrary result.

Underlying the Commission's construction of the reciprocal registration provision is the Commission's consistent construction of the balance of section 2902 to require an applicant for original licensure in Maine to have a bachelor's degree in pharmacy from a school accredited by ACOPE. That strikes us as not only a reasonable interpretation, but also the most likely one, when the fourth and the last sentences of section 2902 are read together. The last sentence requires every original applicant to have a bachelor's degree in pharmacy and the fourth sentence requires him to have graduated from an ACOPE-accredited school. *See* n. 2 above. The language and purpose of section 2902 support, rather than contradict, the Commission's construction of Maine's educational requirement for original registration.

The second step in reaching the Commission's construction of the reciprocal registration provision is its decision that another state that for its original licensure does not require a bachelor's degree from an accredited pharmacy school does not, within the terms of section 2902, "require a degree of competency equal to that required of [original] applicants" in Maine. Massachusetts is such a state because, as we know from the facts of the case at bar, the bachelor graduates of at least one in-state pharmacy school that is unaccredited (i.e., Hampden College of Pharmacy) qualify there to be registered as pharmacists. We cannot say that the Commission was unreasonable in deciding that this difference demonstrates that Massachusetts is satisfied with a lower degree of competency for original applicants than is Maine. Although the reference in section 2902 to "degree of competency" includes more than educational attainments, the Commission was warranted in using educational requirements as one critical measure to compare the competency required for original pharmacist registration in Maine and Massachusetts. *See Liggett Co. v. Baldridge,* 278 U.S. 105, 114–15, 49 S.Ct. 57, 60, 73 L.Ed. 204 (1928) (Holmes, J., dissenting), *quoted with approval in North Dakota State Board of Pharmacy v.*

*Snyder's Drug Stores, Inc.*, 414 U.S. 156, 166, 94 S.Ct. 407, 414, 38 L.Ed.2d 379 (1973); *Dent v. West Virginia*, 129 U.S. 114, 122–23, 9 S.Ct. 231, 233–34, 32 L.Ed. 623 (1889). In *Ditullio v. State Board of Examiners of Psychologists*, 387 A.2d 757 (Me.1978), this court upheld the constitutionality of a statutory requirement that any psychologist seeking either original or reciprocal licensure in Maine must possess a doctoral degree in psychology or a closely allied field. The Commission of Pharmacy had ample reason to believe that accreditation provides sufficient guarantees of higher educational quality to justify the conclusion that a state licensing graduates of unaccredited pharmacy schools applies a lower standard of competency than does Maine. The Supreme Court has said that "the fact that an applicant ... holds a diploma from a reputable dental college has a direct and substantial relation to his qualification to practice dentistry." *Graves v. Minnesota*, 272 U.S. 425, 428, 47 S.Ct. 122, 123, 71 L.Ed. 331 (1926). Paying appropriate deference to the administrative tribunal that is charged with administering section 2902, we find no basis upon which a court may reject its construction of the provision for reciprocal registration of pharmacists.

■ Lucas misconceives the requirements of section 2902 in arguing that his graduate degree and other experience give him the equivalent of the degree of competency required of original Maine applicants. Section 2902 speaks not in terms of a specific applicant's qualifications but, rather, in terms of the minimum standards imposed upon all applicants by the state in which he obtained his original licensure. The fact that Lucas's own personal qualifications may in fact exceed the minimum required for registration in Massachusetts is of no avail.

■ The Commission went further than was required by section 2902 and considered Lucas's own qualifications, despite the fact that he was registered in a state with less demanding requirements for entry to the profession. The Commission, whose expertise on matters of pharmaceutical education far exceeds that of members of the judiciary, determined that a specialized graduate program is no substitute for the general education offered by a bachelor's program in pharmacology. We find nothing arbitrary or unreasonable in the Commission's conclusion that Lucas's successful completion of a specialized graduate program in therapeutics did not make up for any deficiencies that might exist in his undergraduate education in the broad principles of pharmacy in general.

■ As interpreted by the Commission, Maine's statutory requirement of a bachelor's degree from an accredited pharmacy school is the method the legislature has chosen to assure that all applicants for registration, both original and by reciprocity, have a comprehensive grounding in the basics of the profession. We reject appellant Lucas's argument that the Commission incorrectly read the legislative mandate given it by section 2902.

II. *Constitutionality of Section 2902*

■ Lucas also argues that, if section 2902 requires that all pharmacy applicants possess a bachelor's degree from a school accredited by ACOPE, that statutory provision is void as an unconstitutional delegation of a legislative function to ACOPE, a private organization. The constitutional prohibition against delegation of legislative power is grounded in our state constitution.[4] *See* Me. Const. art. III, § 1; art. IV, § 1.[5] Lucas sees as an unconstitutional de-

---

4. The organization and distribution of governmental power among the "branches of a state government does not present an issue of federal constitutional law." *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937). *See Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036, 1039 (D.N.J.1975), *aff'd*, 546 F.2d 418 (3d Cir.1976).

5. Me. Const. art. III, § 1 provides:
   The powers of this government shall be divided into three distinct departments, the legislative, executive and judicial.

fect the absence in section 2902 of any legislatively imposed standards by which ACOPE is to accredit pharmacy schools. *See Superintending School Committee of Bangor v. Bangor Education Association,* 433 A.2d 383 (Me.1981).

■■■ Section 2902, as all other statutes, is "presumed to be constitutional and the burden of proof is on the party who asserts an infirmity." *Union Mutual Life Ins. Co. v. Emerson,* 345 A.2d 504, 507 (Me.1975). Lucas fails to persuade us that Maine's requirement of a bachelor's degree from a pharmacy school accredited by ACOPE suffers from any constitutional infirmity.

Professional licensing statutes similar to section 2902 are commonplace both in Maine and in other jurisdictions. State legislatures almost routinely look to national accrediting agencies to identify those institutions, wherever located, that provide a competent education to qualify their graduates for the practice of a profession.[6] A constitutional attack based on the nondelegation doctrine has almost never been successfully launched against a licensing statute requiring graduation from a nationally accredited professional school. The rationale behind the many court decisions rejecting the "unlawful delegation" argument blends reasoned principle with pragmatic considerations. We accept that same blend as decisive in sustaining the validity of section 2902.

■■■ First, we consider the reasoned principle. Courts have long recognized that a fact or event that has a significance independent of a legislative act may be incorporated by reference into a statute without running afoul of the nondelegation doctrine. Professor Davis has written that "statutes whose operation depends upon private action which is taken for purposes which are independent of the statute" usually pass constitutional muster. 1 K. Davis, *Administrative Law Treatise* § 3.12, at 196 (2d ed. 1978).

The American Council on Pharmaceutical Education (ACOPE) was established in 1932,[7] has been recognized (first in 1952 and continuously since) by the United States Commissioner of Education as the sole national accrediting agency in pharmacy for purposes of various federal programs,[8] and was first referred to in the Maine pharmacist licensing statute in 1959.[9] It currently has accredited some 72 pharmacy schools, located in 43 states, the District of Columbia, and Puerto Rico. American Council on Pharmaceutical Education, *Colleges and Schools of Pharmacy* (pamph. July 1, 1983). ACOPE identifies pharmacy schools for many purposes independent of the use the Maine legislature has elected to make of its determinations. In the first place, ACOPE accreditation provides standards of quality professional education that the administration and faculty of pharmacy schools can work to achieve and maintain. ACOPE's essential purpose "is to provide a professional judgment of the quality of the educational program and to encourage continued

---

Me. Const. art. IV, § 1 provides in part:
The legislative power shall be vested in two distinct branches, a House of Representatives, and a Senate . . . .

6. For example, in Maine, in addition to 32 M.R.S.A. § 2851 (pharmacists), each of the following professional licensing statutes requires, as a condition for practice in Maine, graduation from an educational institution approved by an accrediting agency or association serving that profession nationwide: 32 M.R.S.A. § 551 (Supp.1983–1984) (chiropractors); 32 M.R.S.A. § 2571 (Supp.1983–1984) (osteopathic physicians); 32 M.R.S.A. § 3114–A (Supp.1983–1984) (physical therapists); 32 M.R.S.A. § 3271 (Supp.1983–1984) (medical doctors); 32 M.R.

S.A. § 3651 (Supp.1983–1984) (podiatrists); 32 M.R.S.A. § 4861 (1978 & Supp.1983–1984) (veterinarians); 32 M.R.S.A. § 7053 (Supp. 1983–1984) (certified and registered social workers).

7. The American Council on Pharmaceutical Education, *Accreditation Manual* 1–1 (7th ed. 1983).

8. See detailed discussion below.

9. *See* P.L.1959, ch. 234, § 3, amending the predecessor of 32 M.R.S.A. § 2902 to require graduation from an ACOPE-accredited pharmacy school for licensure in Maine.

improvement thereof." The American Council on Pharmaceutical Education, *Accreditation Manual* 1–1 (7th ed. 1983). As schools strive for accreditation, ACOPE will have assisted the "advancement and improvement of pharmaceutical education .... " *Id.* at II–A–1. Standards for accreditation are not stagnant, and ACOPE will raise those standards in response to developments in pharmacology. *Id.* at II–B–1. To remain accredited a school must keep up with changes in the field of pharmaceutical education. The best professional educators strive to achieve and maintain standards of excellence for their own sake. National accrediting agencies help them in appropriately setting, and then in objectively measuring their institution's progress in meeting, those professional standards. On a practical plane, the stamp of approval given a professional school by its national accrediting agency undoubtedly has considerable significance to the school in attracting high-grade faculty, able students, and generous donors.

In addition to providing a performance goal for schools seeking accreditation, ACOPE standards also operate as a scholarly statement on the status of professional education in the field of pharmacology. As persons vitally concerned with pharmaceutical education convene and work through ACOPE, they "formulate the educational, scientific, and professional principles and standards" of the discipline. *Id.* at II–A–1. Like the work of the legal profession's American Law Institute, whose Restatements help define the state of the law and shape its future, the scholarly debate involved in setting ACOPE standards furthers the search for excellence in pharmaceutical education.

Furthermore, activities of the federal government give independent significance to the accreditation work of ACOPE. Section 253 of the Veterans' Readjustment As-

sistance Act of 1952, 66 Stat. 663 (1952) (current version at 38 U.S.C. § 1775 (1976 & Supp. V 1981)), required the Commissioner of Education

> to publish a list of nationally recognized accrediting agencies and associations which he determines to be reliable authority as to the quality of training offered by an educational institution.

*Id.* The first list published pursuant to this statutory directive includes ACOPE as one such reliable accrediting agency. *See* 17 Fed.Reg. 8929, 8930 (1952).[10] ACOPE was put on that list, and has stayed there, only by complying with strict standards, imposed by the now Secretary of Education, governing qualifications and selection of personnel, adequacy of funding, public participation in the adoption of accreditation standards, and complaint review and appeal procedures. *Id.;* 47 Fed.Reg. 25563 (1982) (codified at 34 C.F.R., part 603, subpart A (1982)). The Secretary of Education's recognition of ACOPE signifies that it

> has gained acceptance of its criteria, methods of evaluation, and decisions by educational institutions, practitioners, licensing bodies and employers throughout the United States.

17 Fed.Reg. at 8930. Throughout the periodic republication of this list, ACOPE has remained nationally recognized as an accrediting agency, up to and including the current version of this list. *See* 47 Fed.Reg. 25563 (1982). From the start in 1952 ACOPE has been the only accrediting agency that has been so recognized for pharmacy schools.

The federal list of nationally recognized accrediting agencies serves to identify approved or accredited schools for the purposes of several financial grant programs. Many educational benefits under the G.I. bill, *see* 38 U.S.C. § 1775, are restricted to the study of academic courses that have

**10.** The chronology of governmental acts involved here further demonstrates the independent significance of ACOPE accreditation. The 1952 list published by the Commissioner of Education for veterans legislation predates

Maine's reliance on ACOPE accreditation for licensure by some seven years. *See* P.L.1959, ch. 234, § 3, first requiring graduation from an ACOPE-accredited pharmacy school for an applicant for licensure as pharmacist in Maine.

been accredited and approved by agencies such as ACOPE. Eligibility for a variety of Public Health Service grants is limited to accredited institutions. *See* 42 U.S.C. § 293a (1976 & Supp. V 1981). These grants are available to public or nonprofit schools offering degrees in a broad range of health fields, including pharmacology. Finally, aid provided by the Department of Education to institutions of higher education is restricted to such institutions as are accredited by one of the nationally recognized accrediting agencies. *See* 20 U.S.C. § 403 (1976 & Supp. V 1981).

Still another function of ACOPE accreditation, independent of its use in Maine, is to govern or guide the licensure of pharmacists in many other states. The Committee on the Pharmaceutical Survey anticipated that ACOPE accreditation would serve the needs of many states in their regulation of pharmacists. *See* Committee on the Pharmaceutical Survey (1946–1949), *General Report* 11 (1950) (quoted in *Accreditation Manual* at II–A–1). A review of the laws of other states demonstrates that Maine is far from alone in attaching significance to the fact that an applicant has graduated from an ACOPE-accredited school.[11]

These aspects of independent significance inhering in ACOPE accreditation nationally clearly distinguish the section 2902 incorporation by reference from an invalid delegation to a private entity of the power to

make law by a "deliberate act intended to encompass that very result."[12] Jaffe, *Law Making by Private Groups,* 51 Harv.L.Rev. 201, 231 (1936). Nothing in our state constitution prevents the legislature from availing itself of the independent work of organizations such as ACOPE.

Second, pragmatic considerations join the "independent significance" principle in supporting the constitutionality of section 2902. A single small state such as Maine does not have available the resources to conduct an ongoing accreditation program for the many hundreds of professional schools whose graduates may seek licensing in Maine. Furthermore, even if Maine were to devote the immense resources required to do the job on its own, our state would end up with a *sui generis* educational requirement for pharmacists and other health professionals. That result would run counter to the nationwide uniformity of educational standards that best serves both consumers and professionals in our highly mobile society. Such pragmatic considerations have been influential with other courts. Because "the Legislature is not made up of pharmacists," *Levine v. Hamilton,* 66 So.2d 266, 267 (Fla.1953), it must avail itself of the work of institutions outside of the legislature. Due to its complexity, the "[r]egulation of drugs demands particular regard for practical considerations." *State v. Kellogg,* 98

---

11. *See, e.g.,* D.C.Code Ann. § 2–2005 (1981); Hawaii Rev.Stat. § 461–5 (1976); N.H.Rev. Stat.Ann. § 318:18 (Supp.1981); Pa.Stat.Ann. tit. 63, § 390–3 (Purdon 1968); R.I.Gen.Laws § 5–19–10 (1976). Other statutes require graduation from a school accredited by ACOPE and approved by that state's pharmacy board. *See e.g.,* Ind.Code Ann. § 25–26–18–11 (Supp. 1983); Mont.Code Ann. § 37–7–302 (1983); Neb.Rev.Stat. § 71–1,145 (Supp.1983); Nev. Rev.Stat. § 639.120 (1983); Utah Code Ann. § 58–17–2 (Supp.1983). Maryland requires graduation from a school accredited by ACOPE or approved by its board of pharmacy. *See* Md. [Health Occ.] Code Ann. § 12–302 (1981). Ohio uses ACOPE standards as a minimum requirement for pharmacy schools whose graduates may be approved for licensure in that state. *See* Ohio Rev.Code Ann. § 4729.08 (Page 1977).

12. The difference pointed out by Professor Jaffe distinguishes the case at bar from *Boston Milk Producers, Inc. v. Halperin,* 446 A.2d 33 (Me.1982), where we held that an increased milk tax that would go into effect only upon the majority vote of certified Maine milk producers violated the constitutional prohibition on the legislature's "in any manner, suspend[ing] or surrender[ing] the power of taxation." There, the invalidity arose from the fact that the vote by the private group of milk producers had no significance independent of deciding whether the new tax would go into effect. *See id.* at 39. In contrast, the ACOPE accreditation of schools of pharmacy has aspects of significance far beyond, both in function and geography, the Maine legislature's reliance upon it for registering pharmacists in this state.

Idaho 541, 543, 568 P.2d 514, 516 (1977). Recognizing the inherent difficulties of strict legislative control of pharmacology, the Idaho Supreme Court noted that "[w]ith a single exception, every court which has passed upon the delegation question, across a wide range of drug-related statutes, has sustained the legislature's action." *Id.,* 98 Idaho at 544, 568 P.2d at 517. *See also Burger v. Richards,* 380 P.2d 687 (Okl.1963) (upholding delegation of duty to develop and apply state pharmacy examination). In *State v. Wakeen,* 263 Wis. 401, 57 N.W.2d 364 (1953), the court upheld a statute criminalizing the sale of drugs by persons other than registered pharmacists against a challenge that the statute delegated to the United States Pharmacopeia Convention the task of defining the term "drugs." The court explained:

> In the present case we have a complete act of the legislature which was not, at the time of its passage, dependent on the act of any other person or organization, but provided for the inclusion of articles discovered in the future with the advancement of science. It should not be held void because it provides for the inclusion of new discoveries, if approved by persons most eminent in the profession who are most interested in maintaining the highest standards known or to be known to science. This is not a case of the delegation of legislative powers. The publications referred to in the statute are not published in response to any delegation of power, legislative or otherwise, by the statute. The compendia are published independently of the statute and not in response to it.

*Id.,* 263 Wis. at 411, 57 N.W.2d at 369. Requirements that health professionals possess a degree from an accredited school have been upheld against challenge on the basis of the nondelegation doctrine,[13] *State v. Hynds,* 61 Ariz. 281, 148 P.2d 1000 (1944) (podiatry), and against other constitutional attack. *E.g., Graves v. Minnesota,* 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926) (dental); *State v. Canova,* 123 So.2d 672 (Fla. 1960) (pharmacy); *State v. Kellogg,* 102 Idaho 628, 636 P.2d 750 (1981) (medical).

Similar pragmatic considerations have led many courts to find nothing unconstitutional in requirements that applicants for admission to the bar have graduated from a law school accredited by the American Bar Association.[14] Distinguishing such a requirement from an unconstitutional delega-

---

13. *Gumbhir v. Kansas State Board of Pharmacy,* 228 Kan. 579, 618 P.2d 837 (1980), is distinguishable on its facts, since the applicant there was the graduate of a foreign pharmacy school that was located beyond the geographical operating sphere of ACOPE. We disagree with whatever suggestion *Gumbhir* may contain to the effect that the nondelegation doctrine would be violated by applying the ACOPE-accreditation requirement to Mr. Lucas, who graduated from an unaccredited pharmacy school in Massachusetts.

14. *See Brown v. Board of Bar Examiners,* 623 F.2d 605 (9th Cir.1980); *Lombardi v. Tauro,* 470 F.2d 798 (1st Cir.1972), *cert. denied,* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973); *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir.); *cert. denied,* 385 U.S. 960, 87 S.Ct. 396, 17 L.Ed.2d 305 (1966); *Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174 (D.Nev.1980); *Moore v. Supreme Court of South Carolina,* 447 F.Supp. 527 (D.S.C.), *aff'd,* 577 F.2d 735 (4th Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978); *Ostroff v. New Jersey Supreme Court,* 415 F.Supp. 326, 327 (D.N.J. 1976); *Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036 (D.N.J.1975); *aff'd,* 546 F.2d 418 (3d Cir.1976); *Application of Urie,* 617 P.2d 505 (Alaska 1980); *In re Stephenson,* 511 P.2d 136 (Alaska 1973), *modified on other grounds, Avery v. Board of Governors,* 576 P.2d 488 (Alaska 1978); *Rosenthal v. State Bar Examining Comm.,* 116 Conn. 409, 165 A. 211 (1933); *Florida Board of Bar Examiners; In re Hale,* 433 So.2d 969 (Fla.1983); *Petition of Busch,* 313 N.W.2d 419 (Minn.1981); *Hansen v. Minnesota Board of Bar Examiners,* 275 N.W.2d 790 (1978), *app. dismissed,* 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979); *Ralston v. Turner,* 141 Neb. 556, 4 N.W.2d 302 (1942); *Application of Nort,* 96 Nev. 85, 605 P.2d 627 (1980); *Petition of Batten,* 83 Nev. 265, 428 P.2d 195 (1967); *Henington v. State Board of Bar Examiners,* 60 N.M. 393, 291 P.2d 1108 (1956); *Appeal of Kartorie,* 486 Pa. 500, 406 A.2d 746 (1979); *Appeal of Murphy,* 482 Pa. 43, 393 A.2d 369 (1978), *cert. denied,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979); *Application of Schatz,* 80 Wash.2d 604, 497 P.2d 153 (1972).

tion, the Minnesota Supreme Court approved

> the rational decision to follow the standards of educational excellence developed by the Section of Legal Education and Admissions to the Bar of the American Bar Association.... We have neither the time, the staff, nor the expertise to make an individual determination as to whether the 173 ABA-accredited law schools or the increasing number of unaccredited law schools across the country meet and maintain those standards. We have chosen, therefore, to rely on the ABA accrediting process, in which we have confidence, and to require ABA accreditation of those law schools whose graduates will become our practicing lawyers.

*Petition of Busch,* 313 N.W.2d 419, 421 (Minn.1981). *See also Florida Board of Bar Examiners; In re Hale,* 433 So.2d 969, 972 (Fla.1983); *Appeal of Murphy,* 482 Pa. 43, 393 A.2d 369 (1978), *app. dismissed,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979). As Justice Samuel J. Roberts has written:

> The resources of this Court and its Board of Law Examiners are neither sufficient nor suited to the task of "accrediting any particular law school," let alone the 170 approved law schools in this country.... To accredit law schools in ad hoc proceedings would place intolerable burdens upon this court, would yield results far less reliable than those of the A.B.A., and would invite challenges as to the quality of ad hoc determination.

*Appeal of Kartorie,* 486 Pa. 500, 504–05, 406 A.2d 746, 748 (1979) (Roberts, J., concurring).

In conclusion, we find no violation of either the governing statute or the Maine Constitution in the Maine Commission of Pharmacy's denial of reciprocity registration to a pharmacist licensed by Massachusetts, a state that for its original licensure does not require a bachelor's degree from an ACOPE-accredited school.

The entry is:

Judgment affirmed.

All concurring.